UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| RICHARD BREAUX | * | CIVIL ACTION |
| | * | |
| | * | NO. 08-893 |
| | * | REF: ALL CASES |
| | * | |
| GULF STREAM COACH, INC. ET AL | * | SECTION "L"(5) |

### ORDER & REASONS

Before the Court is Plaintiff Richard Breaux' Motions to Remand to State Court (Rec. Doc. No. 20 and Rec. Doc. No. 27). For the following reasons, the motions are GRANTED.

## I. BACKGROUND:

The Plaintiff has filed two suits relating to the same set of facts as this case. The Plaintiff alleges that on or about January 13, 2007, the Plaintiff's father was hospitalized as a result of an explosion in a FEMA trailer. The Plaintiff claims that as a result of injuries suffered from the explosion, the Plaintiff's father died on April 23, 2007. The Plaintiff sued Defendants Gulf Stream Coach, Inc., Fluor Enterprises, C. Martin Company, Inc., MTI Industries, CH2M hill Constructors, Inc. and John Doe Construction, Inc. for liability arising from the design, manufacture and installation of safety devices in the trailer, improper construction and manufacture of the trailer, and for the failure to properly inspect the trailer. The case was originally filed in state court, and the Defendant Gulf Stream removed the case to federal court. The Plaintiff alleges that after receiving informal notice from the Defendants that Shaw Environmental, Inc. ("Shaw") was responsible for the inspection of the trailer, the Plaintiff filed a Motion for Leave to File First Amended Complaint on April 21, 2008, adding Shaw as a Defendant, as well as another suit in state court naming Shaw as a direct Defendant.

## II. PRESENT MOTION

The Plaintiff now moves to remand the case. First, the Plaintiff argues that the federal court lacks subject matter jurisdiction because the addition of Defendant Shaw, a Louisiana citizen, destroys diversity. Second, the Plaintiff argues that the Defendant is not entitled to federal officer removal under 28 U.S.C. § 1442.

The Defendants oppose the motion. In response to the claim that federal court lacks jurisdiction, the Defendants argue that FEMA is potentially liable and is therefore a necessary party because complete relief cannot be granted in its absence. Regarding federal officer removal, Shaw argues that FEMA was not just a market participant; the federal government vested private entities with authority to install FEMA trailers, while exercising pervasive control. As for the three requirements for federal officer removal, Defendants argue first that Shaw is undisputably a person. Second, Shaw acted under color of federal authority under the direction of FEMA. Shaw was acting under supervision of a government contractor, FEMA, to assist or carry out the federal government's tasks, providing emergency housing. Additionally, Shaw argues that it meets the causal nexus requirement because Shaw's acts in the performance of official duties under the direction of FEMA constitute the basis for the suit. Third, the Defendants argue that Shaw has raised a colorable federal defense: the government contractor defense.

## III. LAW AND ANALYSIS

The removing defendant bears the burden of demonstrating that federal jurisdiction exists and therefore that removal was proper. *See Jernigan v. Ashland Oil, Inc.* 989 F.2d 812, 815 (5th Cir. 1993). The removal statute is to be construed narrowly and in favor of remand to state court. *See Shamrock Oil & Gas Corp. v. Sheets,* 313 U.S. 100 (1941). Accordingly, all

disputed questions of fact must be resolved in favor of the non-moving party. *See Burden v. Gen. Dynamics Corp.,* 60 F.3d 213, 216 (5th Cir. 1995).

### A. Federal Officer Removal

The Defendants argue that federal jurisdiction exists pursuant to the federal officer removal statute, which provides in pertinent part:

> (a) A civil action . . . commenced in a State Court against any of the following may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending:
>
> (1) The United States . . . or any officer (or any person acting under that officer) of the United States or of any agency thereof, sued in an official or individual capacity for any act under color of such office . . . .

28 U.S.C. § 1442(a)(1). The purpose of this statute is to provide a federal forum in cases where federal officials are entitled to raise a defense arising out of their official duties. *See Arizona v. Manypenny*, 451 U.S. 232, 241 (1981). Though generally remand to state court is favored when removal jurisdiction is questionable, removal jurisdiction under the federal officer removal statute must be broadly construed. *See Willingham v. Morgan*, 395 U.S. 402, 407 (1969). Indeed, the Court must interpret the statute liberally, resolving any factual disputes in favor of federal jurisdiction. *See Louisiana v. Sparks*, 978 F.2d 226 (5th Cir. 1992).[1]

---

[1] The United States Supreme Court recently discussed the purposes behind § 1442(a)(1) in *Watson v. Philip Morris Companies, Inc.*, 551 U.S. 142 (2007). The Supreme Court noted that the federal officer removal statute's "basic purpose is to protect the Federal Government from the interference with its operations that would ensue were a State able, for example, to arrest and bring to trial in a State court for an alleged offense against the law of the State, officers and agents of the Federal Government acting . . . within the scope of their authority." *Id.* at *6 (internal quotations omitted).

The Defendants contend that they are "person[s] acting under" an agency of the United States, namely FEMA, and thus are entitled to a federal forum in these cases. *See* 28 U.S.C. § 1442(a)(1). The federal officer removal statute confers jurisdiction only if at least one of the Defendants is (1) a "person," (2) that acted under color of federal authority when committing the allegedly tortious conduct, and (3) can assert a colorable federal defense. *See Winters v. Diamond Shamrock Chem. Co.*, 149 F.3d 387 (5th Cir. 1998) (applying three-part test elucidated by the United States Supreme Court in *Mesa v. California*, 489 U.S. 121 (1989)). When a private entity invokes § 1442(a)(1), it must "demonstrate that a federal officer has direct and detailed control over it." *Kaye v. Sw. Airlines Co.*, No. 05-450, 2005 WL 2074327, at *3 (N.D. Tex. Aug. 29, 2005) (citing *Winters*, 149 F.3d at 399-400 and 16 James Wm. Moore et al., *Moore's Federal Practice* § 107.15(1)(b)(ii) (3d ed. 2005)).[2]

In the present cases, the parties do not dispute that the Defendants are "persons" for purposes of the statute. The parties do dispute whether Defendant Shaw was acting under the direction of an officer of the United States and whether a causal nexus exists between the Shaw's actions and the Plaintiff's claims. The parties also dispute whether Shaw can assert a colorable federal defense.

### 1. Direct and Detailed Control Over Shaw and Casual Nexus

---

[2] The Supreme Court's recent decision in *Watson* also interpreted the "acting under" language of § 1442(a)(1). The Court read "acting under" to require "a relation to one holding a superior position or office," one which "typically involves subjection, guidance, or control." 2007 WL 1660910, at *7 (internal citations omitted). Indeed, the Court stated that "the private person's 'acting under' must involve an effort to *assist*, or to help *carry out*, the duties or tasks of the federal superior." *Id.* The Court ultimately held that "the help or assistance necessary to bring a private person within the scope of the statute does *not* include simply *complying* with the law." *Id.* However, as "private contracting" was not at issue in *Watson*, the Court did not consider "whether and when particular circumstances may enable private contractors to invoke the statute." *Id.* at *8.

Courts frequently look at the "federal direction" and "causal nexus" prongs of the *Mesa* test together as they are so closely related– the Defendant must establish a "causal nexus" between the alleged tortious conduct and the acts performed by the defendant under the direction of a federal officer. *See, e.g. Winters,* 149 F.3d at 398. Determination of the "federal direction" prong depends on "the level of official control, and perhaps more to the point, whether the defendant acted sufficiently under the direction of a federal officer in the performance of the acts that form the basis of the suit." *Guillory v. Ree's Contract Service, Inc.*, 872 F. Supp. 344, 346 (S.D. Miss. 1994) (internal citation omitted).

Shaw argues that its work was controlled by FEMA through the contract between them as well as other contract documents. According to Shaw, it was hired to help FEMA do what FEMA was required to do under law and FEMA provided detailed specifications, checklists, procedures and policies regarding the installation, maintenance and inspection of FEMA trailers. Further, Shaw argues that FEMA retained detailed control over Shaw and reviewed Shaw's work to ensure compliance with FEMA's strict standards.

"[T]he determination of whether a defendant has acted under color of federal office depends on the level of official control." *City of Petal, Miss. v. Ashbritt, Inc.*, 2008 WL 4372758, *2 (S.D.Miss.2008). "The level of official control will be sufficient only if it is 'direct and detailed.'" *Id; see also Preston v. Tenet Healthsystem Mem. Med. Ctr*. 463 F.Supp.2d 583, 590 (E.D.La.2006) (Fallon, J.); *Winters*, 149 F.3d 387, 399-400; *Joseph v. Fluor Corp*., 513 F.Supp.2d 664, 672 (E.D.La.2007) (Fallon, J.); *Petal*, 2008 WL 4372758 at *2 (S.D.Miss.2008); *Walker v. AMID/Metro Partnership LLC*, 2008 WL 5382372 (E.D. La. Dec. 19, 2008) (Barbier, J.). The three factors that provide guidance as to the level of control exercised by the federal government are: (1) the level of detail in the government's specifications; (2) the government's

compulsion with regard to the specifications; and (3) the degree of supervision exercised by the government. *Id.* Thus, "[f]ederal direction requires more than general auspices of a federal officer, or participation in a regulated industry.*"* *Bradley v. Northrop Grumman Systems*, 2007 WL 115246, at *2 (E.D. La. 4/12/07) (citing *Savoie v. Northrop Grumman Ship Systems, Inc.*, No. 05-02086 (E.D. La. 2005) and *Mouton v. Flextallic, Inc.*, 1999 WL 225438, at *2 (E.D. La. 4/19/99)); *Ryan v. Dow Chemical Co.*, 781 F.Supp. 934, 947 (E.D.N.Y. 1992). "[T]he defendant must show strong government intervention and the threat that a defendant will be sued in state court based on actions which follow federal direction." *Bradley*, 2007 WL 115246, at *2 (citing *Mouton*, 1999 WL 225438, at *2-3) (internal quotation omitted).

In *Watson v. Philip Morris Companies, Inc.*, the Supreme Court most recently discussed the meaning of the words "acting under" in the context of Section 1442(a)(1). *See* 551 U.S. 142 (2007). The Court found that "the help or assistance necessary to bring a private person within the scope of the [federal officer removal] statute does *not* include simply *complying* with the law." *Id*. at 2307 (emphasis in original). Instead, "acting under" must involve "an effort to assist, or to help carry out, the duties or tasks of the federal superior," as part of a relationship involving "subjection, guidance or control." *Id*. at 2307. The Court further stated that "a highly regulated firm cannot find a statutory basis for removal in the fact of federal regulation alone." *Id*. at 2308. To determine whether or not Philip Morris was "acting under" federal authority, the Court looked to communication between the entities. The Court noted that "neither Congress nor federal agencies normally delegate legal authority to private entities without saying that they are doing so." *Id*. at 2310. The Court found that the relationship between the defendant and the federal government did not qualify Philip Morris for federal officer removal, and remanded the case. The Fifth Circuit's traditional test for "direct and detailed control" to qualify as "acting

under" federal authority is consistent with the holding in *Watson*. *See Walker*, 2008 WL 5382372 at *6.

This Court in *Joseph v. Fluor Corp.*, addressed federal officer removal in a case involving a gas stove explosion in a trailer provided by FEMA. *See* 513 F.Supp.2d. 664 (E.D. La.2007) (Fallon, J.). The Court found that a private party who supplied trailers to FEMA in the wake of Hurricane Katrina could not invoke the federal officer removal statute in a cause of action arising out of personal injuries from the explosion because FEMA did not exert sufficient control over the manufacturer of the trailer. The court stated that "[a]lthough FEMA's purchase orders establish some basic parameters within which services [were] to be performed, it is simply not the case that private entities are entitled to a federal forum whenever litigation arises concerning products sold to the federal government." *Fluor Corp.*, 513 F.Supp 2d at 673 (citations omitted).

The contract between the federal government and the Defendants in the present case is substantially detailed. The Defendant argues that the Performance Work Statement portion of the contract between FEMA and Shaw states that the purpose of the contract was for Shaw to help FEMA carry out its obligations under the law.[3] However, the "acting under" and "causal nexus" requirements are not focused solely on whether a person was involved in an effort to assist, or to help carry out, the duties or tasks that the federal government must perform under the law. *See Walker*, 2008 WL 5382372 at *6 ("Watson's primary focus [is] that the assistance must be in the context of subjection, guidance, or control by a federal superior.") (internal

---

[3]*See* Def.'s Mot. for Leave to File (Rec. Doc No. 28-7) ("FEMA is authorized pursuant to the Disaster Relief and Emergency Assistance Act to provide assistance to disaster victims under a Presidential declaration of a disaster and emergency. This contract will facilitate the implementation of the Individual Assistance (IA) program by providing project management resources, expertise and technical assistance.").

citations omitted). The Court must still determine whether the specifications in the contract and the control exercised by FEMA are *sufficiently* detailed for the purposes of 1442(a)(1). *See Petal*, 2008 WL 4372758 at *2.

Shaw has provided numerous exhibits to demonstrate that FEMA directed Shaw's work through the contract. The Work Plan states, "The contractor will provide a work plan identifying the various factors that could impact the temporary disaster housing mission and what it would take to perform each required task in the most effective, expedited, and efficient manner available." Def.'s Mot. Leave to File (Rec. Doc. No. 28-8). Although the government provided the Defendant with FEMA priorities, the contract also states that Shaw will establish and perform maintenance procedures, and that the specifications establish only the minimum requirements for maintenance. The level of guidance provided by FEMA provides Shaw with the discretion to exceed the minimum specifications for temporary housing. The contract states that the contractor is expected to correct problems that the occupants are not expected to correct. The Performance Work Statement also states that the "[c]ontractor shall be responsible for providing appropriate equipment for the respective work environment and requirements." Def.'s Opp. Mot. (Rec. Doc. No. 35-5).

The Defendants cite numerous provisions indicating the Defendant Shaw's compulsion in the performance of the contract. However, the contract provides that FEMA does not control the implementation of the Work Plan. The contract directs the contractor to provide a Work Plan that explains and describes how the contractor will manage and perform all tasks. "All work performed shall be in accordance with all applicable federal, state and local codes and regulations. The provisions herein and typical details shall not be construed as lowering standards established by local laws, ordinances or regulations." Def.'s Mot. for Leave to File

(Rec. Doc. No. 28-9). The contract further leaves repairs, inspection, the drafting of plans and ensuring the tasks are performed to Shaw, with the requirement that Shaw provide certain reports on its work to FEMA. These reporting requirements indicate some on-going supervision on behalf of FEMA. However, the overall contract shows that Shaw, rather than the government, was primarily responsible for the supervision of repairs, correction of problems, and provision of maintenance. The degree of supervision does not rise to the level of direct and detailed control over the day-to-day operations of developing and maintaining the units.. The "acting under" element is not satisfied where, as here, a company follows basic contractual parameters after the government has entered the market to obtain a service. *See Fluor Corp.*, 513 F.Supp 2d at 673 (no federal officer removal where contract established some minimum standards and where, "[f]ar from evidencing federal control over the manufacturing process, [the contract] reflects the reality that FEMA merely entered the market for travel trailers as would any other buyer, with certain practical and economic considerations in mind").

"While [ § 1442(a)(1) ] is to be liberally construed, it must nevertheless be interpreted 'with the highest regard for the right of the states to make and enforce their own laws in the field belonging to them under the Constitution.'" *Preston*, 463 F.Supp.2d at 590 (*quoting Dixon v. Ga. Indigent Legal Servs., Inc.*, 388 F.Supp. 1156, 1162 (S.D.Ga.1975)). After reviewing the contract, the court finds that there is insufficient detail and control to support finding that the Defendant acted under color of federal office.

### B. Necessary Party

Defendant Gulf Coach argues that FEMA acted as an owner and landlord over the trailer and is potentially liable to the Plaintiff for its lease of the allegedly defective premises under Louisiana Civil Code article 2315 and 2695. Accordingly, Gulf Coach argues that FEMA

is an indispensable party under Rule 19 and complete relief cannot be granted in its absence.

The Plaintiff argues that FEMA is not a necessary party because FEMA is merely a potential joint tortfeasor. The Plaintiff cites *Temple v. Synthes Corp., Ltd.*, 498 U.S. 5, 8 (1990) for the proposition that joint tortfeasors are not necessary parties. The Plaintiff further argues that the Fifth Circuit has consistently held that joint tortfeasors are not necessary parties under Rule 19.

Federal Rule of Civil Procedure 19 establishes the standards for joinder of necessary and indispensable parties. *See* Fed.R.Civ.P. 19(b) (enumerating factors to consider in determining whether the case should be dismissed when a necessary party cannot be joined). The rule demonstrates, however, that the requisite analysis presents a threshold question of whether the party is necessary. *See* Fed.R.Civ.P. 19(a). Typically, Rule 19 is addressed in the context of a motion to dismiss, and a defendant must show "that there is at least one party: (1) who should be joined if feasible (a necessary party), (2) whose joinder is not feasible, and (3) in whose absence the action cannot proceed in equity and good conscience (an indispensable party)." *James v. Valvoline*, *Inc.*, 159 F.Supp.2d 544, 550 (S.D.Tex.2001); *see also Temple v. Synthes Corp.*, 498 U.S. 5, 8 (1990) ("[N]o inquiry under Rule 19(b) is necessary [where] the threshold requirements of Rule 19(a) have not been satisfied."). The movant bears the burden of proving each element, namely necessity, unavailability, and indispensability. *See James*, 159 F.Supp.2d at 550 (citing *Nottingham v. Gen. Am. Commc'ns Corp.*, 811 F.2d 873, 880 (5th Cir.1987)).

In *Temple v. Synthes Corp.*, the United States Supreme Court held that joint tortfeasors are "merely permissive parties" under Rule 19 . *Temple*, 498 U.S. at 7("It has long been the rule that it is not necessary for all joint tortfeasors to be named as defendants in a single

lawsuit."). In *Temple*, a doctor and hospital, though joint tortfeasors in a products liability lawsuit arising out of a plate and screw device that was implanted into the plaintiff's lower spine, were not indispensable parties under Rule 19 . *See id.* at 6-7. The *Temple* defendant alleged that the plaintiff's injury may have been caused by negligence on the part of the doctor and hospital, but the Supreme Court did not consider the overlapping claims of the alleged joint tortfeasors enough to make the doctor and hospital indispensable parties. *See id.* at 7.

Here, the Plaintiff's potential claims against FEMA are insufficient to find FEMA to be a necessary party. While the Plaintiff may have claims against FEMA, such claims would be distinct from their claims against the Defendants and therefore FEMA would be a permissive party and not a necessary party. Accordingly, the Court finds that FEMA is not a necessary party.

**IV. CONCLUSION**

For the foregoing reasons, these cases are remanded to Civil District Court for the Parish of Orleans, State of Louisiana. IT IS ORDERED that Plaintiff's Motions to Remand are hereby GRANTED.

New Orleans, Louisiana this 20th day of January, 2009.

_____
UNITED STATES DISTRICT JUDGE